466 A.2d 1065
**COMMONWEALTH of Pennsylvania**

v.

**James A. GINNERY, Appellant.**

Superior Court of Pennsylvania.

Argued May 24, 1983.
Filed Oct. 7, 1983.

Joseph P. Martone, Erie, for appellant.

Timothy J. Lucas, Assistant District Attorney, Erie, for Commonwealth appellee.

Before CAVANAUGH, ROWLEY and CIRILLO, JJ.

ROWLEY, Judge:

Appellant James A. Ginnery, was convicted by a jury of indecent exposure. This is his direct appeal from the judgment of sentence imposed following denial of his post-trial

motions. The Commonwealth's evidence was that in April of 1980 David Dombrowski, age fourteen at the time of trial, was delivering newspapers in the late afternoon in the City of Erie when a man drove up in his car and asked David to come over to the car. When David complied he looked in the car and saw appellant's penis exposed. David left. David did nothing about the incident but the next day he encountered the same individual who again called him to the car. This time David took down the license plate number and reported the incident to his father resulting in appellant's eventual arrest. David identified Ginnery at trial as the offender.

On appeal, appellant claims primarily that he is entitled to a new trial on the ground that it was error to permit the Commonwealth to make reference to and to display to the jury a photographic array from which David identified appellant. Appellant also argues that the evidence was insufficient to support the verdict and that the verdict was against the weight of the evidence. None of these contentions have any merit.

The trial judge did not abuse his discretion [*Commonwealth v. Sinwell*, 311 Pa.Super. 419, 457 A.2d 957 (1983)] in overruling appellant's objection to testimony at trial regarding the photo line-up and the display of the photo line-up to the jury. Showing these pictures to the jury did not constitute a fact from which "a juror could reasonably infer ... that the accused had engaged in prior criminal activity." *Commonwealth v. Allen*, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972).

The disputed testimony arose when the prosecutor called Detective Barnett of the Erie Police Department. Barnett had determined that the license number was registered to appellant and testified that thereafter he showed a series of photographs to David. There were six photographs, each of a different person with like characteristics. David identified appellant's photograph as the photograph of the perpetrator. The photographs were presented at trial and objected to by appellant's counsel. The objection was overruled.

The photographs were not, however, marked in evidence or otherwise identified for the record. Nevertheless, the photos, which apparently had some police information, including criminal records, on the reverse side were attached to a file folder so that the information on the back was concealed. They were then exhibited to the jury. The photos were described at the time by appellant's counsel as looking "terrible", but were stated by the trial judge not to be "mug prints". Detective Barnett was one of two witnesses for the Commonwealth and his references to the photographs constituted a major portion of his testimony.

In *Commonwealth v. Krasner*, 285 Pa.Super. 389, 427 A.2d 1169 (1981), an en banc panel of this Court refused to find prejudice in the testimony of a state trooper that a witness had picked the defendant out of a group of six or seven pictures shown to the witness by the trooper. In *Commonwealth v. Reiss*, 301 Pa.Super. 96, 447 A.2d 259 (1982), *Krasner* was distinguished on the basis of the number of photographs shown and the place of showing. The *Reiss* court found that the viewing by the witness of 100 pictures at police headquarters, when revealed to the jury, could reasonably raise an inference that the photographs viewed were "mug shots." Because only six photographs were involved in appellant's case, and because they were shown to the victim in his home, we are of the opinion that *Krasner* rather than *Reiss* controls this case.

Other cases cited by appellant are distinguishable. *Commonwealth v. Dickerson*, 267 Pa.Super. 492, 406 A.2d 1149 (1979) and *Commonwealth v. Elmore*, 241 Pa.Super. 470, 362 A.2d 348 (1976) were based upon the large number of photographs shown (several hundred in each case). Nor is the case of *Commonwealth v. Taylor*, 460 Pa. 616, 334 A.2d 261 (1975) controlling. In *Taylor*, a uniquely prejudicial situation resulted from the particularly suggestive nature of certain comments made by the assistant district attorney in his opening statement to the jury combined with

the testimony of the victim concerning the photographic identification.[1]

In *Commonwealth v. Allen, supra,* the Pennsylvania Supreme Court stated that "[t]he suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected." 448 Pa. at 181, 292 A.2d at 375. The earlier case of *Commonwealth v. Luccitti,* 295 Pa. 190, 145 A. 85 (1928) was cited as a correct interpretation of the law. In *Luccitti,* photographs in possession of the police were introduced to demonstrate defendant's change in appearance. The offer was upheld because "[o]n examination of the record, there [was] nothing to indicate that the pictures came from the rogue's gallery, and the lower court state[d] in its opinion that there was absolutely no markings on the pictures of any kind which would show their use." *Id.,* 295 Pa. at 199, 145 A. at 89.

Certainly there might be cases where showing pictures to a jury would be prejudicial error. However, this

1. There were two specific photographic references during trial. In his opening address to the jury, the Assistant District Attorney stated:
   "Now it just so happened that Mr. Watts had seen the defendant on other occasions and Watts also happened to be an off-duty police officer and he knew his name. So he supplied the police with the name of the defendant.
   Anyway, at this point the police had been supplied with the name of the defendant. They know who they are looking for. Now Officer Burns recognizes the defendant, he's been carrying his picture around with him and knows that he's wanted in connection with this tap room robbery." (Emphasis added).
   The other reference was on cross-examination of Mr. Watts (the victim) and was as follows:
   "By Mr. Fitzpatrick (counsel for defendant)
   Q. Officer Watts, you said that the interview took place inside your home at approximately what time?
   A. Approximately 11:00 o'clock I would imagine.
   Q. Are you sure it didn't take place inside the 35th District at 11:00 o'clock?
   A. That's correct. I was at the District during the interview and at home when he brought back photos. He brought the photos to me to look at and identified the defendant from the photos. (The reference to the 'he' brought the photos for Officer Watts to look at was to the detective assigned to the case.)" (Emphasis added).
   *Commonwealth v. Taylor,* 460 Pa. at 618–19, 334 A.2d at 262.

would only be true if there were something in the nature of the photographs themselves, or in testimony referring to them, which might cause a juror to associate them with criminal activity, i.e. if they *looked* like "mug shots." Although defense counsel in this case expressed his opinion that the pictures looked "terrible," he did not elaborate by specifying what he thought was objectionable about them other than by indicating that there was police information on the backs of the photographs. However, the jury was not shown that information. The trial judge examined the pictures and they were attached to a folder so that the information was not visible to the jury. The trial judge also noted that the photographs were *not* "mug shots." The pictures were shown to the jury for the valid purpose of corroborating a good, but possibly not perfect,[2] in-court identification of the appellant. There were viewed only in passing and were not sent out with the jury for close inspection. It is quite evident that the trial judge was aware of the potential for prejudice and that he took precautions to avoid it. There is nothing in the record to indicate that he made the incorrect decision. There is nothing about the photographs, as displayed, or the testimony relative to them that warrants an inference of prior criminal activity on the part of appellant. Nor is there anything to indicate that the jury may have engaged in speculation as to the source or nature of the photographs.

■ Having reviewed the entire record, we are also satisfied that the evidence was more than sufficient to support the jury's verdict and that the verdict is not contrary to the weight of the evidence. Judgment of sentence affirmed.

CAVANAUGH, J., filed a dissenting opinion.

**2.** Immediately following the incident, the fourteen year old victim gave a description of the offender and of the offender's car, including the license plate number. However, he did not at this time include defendant's beard in the description. The police located the defendant by tracing his car. The photographic identification was made at the victim's home, four or five days after the incident.

74

CAVANAUGH, Judge, dissenting:

I respectfully dissent. The question which we address on this appeal is whether reversible error was committed when the trial court permitted photographs of six individuals including appellant to be identified and shown to the jury. Under the circumstances of this case, I believe it is abundantly clear that the jury could reasonably infer from the facts presented that the defendant had engaged in prior criminal activity and that a new trial must be granted.

Appellant James A. Ginnery, was convicted by a jury of indecent exposure and his appeal is from a judgment of sentence following denial of his post-trial motions. The Commonwealth's evidence was that in April of 1980 David Dombrowski, age fourteen at the time of trial, was delivering newspapers in the late afternoon in the City of Erie when a man drove up in his car and asked him to come over to the car. When Dombrowski complied he looked in the car and saw appellant's penis exposed and he left. Dombrowski did nothing about the incident but the next day he encountered the same individual who again called him from the car. This time Dombrowski took down the license plate and reported the incident to his father resulting in appellant's eventual arrest. The minor victim identified Ginnery at trial as the offender. The disputed testimony arose when the prosecutor called Detective Barnett of the Erie Police Department. He determined that the license number was assigned to appellant and testified that thereafter he showed a series of photographs to Dombrowski. There were six photographs of different persons with like characteristics and the witness identified appellant as the perpetrator. These photos were produced at trial and objected to. They were not marked in evidence or otherwise identified for the record. Nevertheless, the photos which apparently had some police information including criminal records on the reverse side were, for that reason, placed on a file folder and shown to the jury. The photos were described at the time by appellant's counsel as looking "terrible", but were stated by the trial judge not to be "mug prints".

Detective Barnett was one of two witnesses for the Commonwealth and the references to the photographs represented a major portion of his testimony.

The leading case on the issue of prejudice from reference to photographs from which inferences of prior criminal activity can be drawn is *Commonwealth v. Allen*, 448 Pa. 177, 292 A.2d 373 (1972). The court held:

> We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity. Thus, testimony suggesting that the photograph was secured from a school yearbook or from the possession of acquaintances of the defendant illustrates situations where the suspect is not prejudiced by the photographic reference.

> It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that "[t]he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more liable to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Trowery*, 211 Pa.Super. 171, 173–174, 235 A.2d 171, 172 (1967). Recognizing the prejudicial effect of such evidence, there is no justification for indirectly allowing the

introduction of prior criminal activity by reference to photographs of the accused. Once it is determined that a jury could reasonably conclude from the photographic reference prior criminal activity on the part of the defendant prejudicial error has been committed. (footnote omitted)

The principle of the *Allen* case has received considerable appellate attention. In *Commonwealth v. Krasner*, 285 Pa.Super. 389, 427 A.2d 1169 (1981), this court sitting en banc found no reversible prejudice in reference to photos which were not characterized as police photos or mug shots and which were not displayed, marked or otherwise referred to at trial. A majority of a panel of this court, however, in a subsequent case granted a new trial where there was repeated reference in the record to the display of photographs to the victim by a police investigator. The court noted that there had been a large number of photographs submitted to the victim from which the identification was made and also pointed out that reference to the photograph had been made in the court's charge to the jury. *Commonwealth v. Reiss*, 301 Pa.Super. 96, 447 A.2d 259 (1982), rehearing denied July 19, 1982. Another relevant post *Allen* case is *Commonwealth v. Dickerson*, 267 Pa.Super. 492, 406 A.2d 1149 (1979). In this case there was testimony that the victim was shown photographs at the police station from which an identification was made. A new trial was granted and the court stated that it would be "quite naive" to believe the jury could not reasonably infer the photographs were mug shots.

Examining the principles which emerge from these cases and others,[1] I believe a new trial must be granted. Here, the evidence was not a mere passing reference but played a significant role in the Commonwealth's calibration of it's

1. *See* for example: *Commonwealth v. Wilson*, 257 Pa.Super. 329, 390 A.2d 847 (1978); *Commonwealth v. Elmore*, 241 Pa.Super. 470, 362 A.2d 348 (1976); *Commonwealth v. Sheetz*, 233 Pa.Super. 474, 334 A.2d 707 (1975); *Commonwealth v. Taylor*, 460 Pa. 616, 334 A.2d 261 (1975); *Commonwealth v. DeMarco*, 225 Pa.Super. 130, 310 A.2d 341 (1973).

prosecution evidence. It was in fact the chief subject of one of the two Commonwealth's witnesses' testimony. The source of the photos was evident since the photographs were taken to the complaining witness's home by the police detective and, although the court described them as not being mug shots, they were described without contradiction by appellant's attorney as looking "terrible". The photos were shown to the jury in a manner necessarily contrived to avoid inspection of the reverse sides, and the identification by the witness took place just four days after the criminal incident. Finally, the court mentioned the photographs in its charge. Under the circumstances, I submit it is unreasonable to conclude that the jurors could fail to reasonably infer that appellant had engaged in prior criminal activity. A new trial should be granted since the presumed effect of the evidence would predispose the minds of the jurors to believe the appellant was guilty and strip him of his presumption of innocence. *Commonwealth v. Allen, supra; Commonwealth v. Brunner,* 305 Pa.Super. 411, 451 A.2d 714 (1982). Although I find no merit to appellant's other contentions on appeal, I would grant a new trial.